[Cite as *State v. Chester*, 2023-Ohio-2122.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

ISAAC J. CHESTER,

        Defendant-Appellant.

CASE NO. 2022-P-0060

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2021 CR 00462

**O P I N I O N**

Decided: June 26, 2023
Judgment: Affirmed

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Neil P. Agarwal*, Law Offices of Agarwal & Agarwal, 3732 Fishcreek Road, P.O. Box 288, Stow, OH 44224 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1}     Appellant, Isaac J. Chester, appeals his sentencing entry following his guilty plea to one count of failure to comply with an order or signal of a police officer. We affirm.

{¶2}     In 2021, during a traffic stop, Chester fled from officers in his vehicle. Officers pursued Chester for approximately 62 miles. During the pursuit, Chester purportedly tossed a firearm from his car. Officers ultimately apprehended Chester and allegedly located drugs in his vehicle.

{¶3}     Thereafter, Chester was indicted on the following counts: failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331, a third-degree

felony; identity fraud, in violation of R.C. 2913.49, a fifth-degree felony; and aggravated possession of drugs, in violation of R.C. 2925.11, a fifth-degree felony. After initially pleading not guilty, Chester ultimately entered a guilty plea to the charge of failure to comply with an order or signal of a police officer, and the state dismissed the remaining counts. The trial court referred the matter to the probation department for the preparation of a presentence investigation and report and set the matter for sentencing. Thereafter, the court continued sentencing several times on Chester's motions, wherein he requested sentencing be postponed until proceedings pending against him in Cuyahoga County were resolved.

{¶4} Subsequently, a sentencing hearing was scheduled in the present matter for July 5, 2022. At the hearing, which was held via remote contemporaneous video, a different attorney stood in for defense counsel. The stand-in attorney indicated that Chester had advised him that he was not going to appear on camera due to "unfinished business" with defense counsel. Stand-in counsel further indicated that Chester was surprised that his sentencing was scheduled for that date. When the trial court attempted to address Chester, the case manager at the correctional institution where Chester was confined informed the court that Chester had left the room.

{¶5} Thereafter, the court again held a sentencing hearing via remote contemporaneous video on August 10, 2022. At the commencement of the hearing, the trial court stated:

> THE COURT: State of Ohio versus Isaac Chester. He is present in court today by way of video from the jail.
>
> I am going to place some things on the record as to why Mr. Chester is not being brought over in person.

I'm going to go back to July 5, 2022, he was still at the Institution, I scheduled a sentencing hearing, he refused to come to the room to participate in his sentencing. I have the transcript here. He just refused to participate.

So in response to that, I had him physically brought here from the Institution to Portage County so that I could sentence him.

I had scheduled, I believe it was last week for sentencing in person.[1] He became incredibly disruptive and had to be removed from the courtroom.

So today I know he can hear me, I know he can see everything that's going on in here. We have a video set up. And I, to avoid not being able to continue with this sentencing, I have him visibly here remotely from the jail so that he can see us and that we can see him.

{¶6} The sentencing hearing then proceeded, and the trial court sentenced Chester to 24 months of imprisonment, to be served as a mandatory consecutive sentence to the sentence Chester was currently serving on his convictions imposed in the Cuyahoga County case. The sentence was incorporated in an entry dated August 10, 2022, which also set forth that Chester was to receive 104 days of jail-time credit, "as stipulated by the parties." On August 11, 2022, the trial court issued a nunc pro tunc sentencing entry suspending Chester's license and ordering forfeiture of the firearm and ammunition.

{¶7} On October 18, 2022, Chester moved the trial court for the appointment of counsel to assist in an appeal. The trial court granted the motion, and counsel filed a delayed appeal with leave of this court.

---

1. The record does not include a transcript of the attempted in-person sentencing hearing.

3

Case No. 2022-P-0060

**{¶8}** In his assigned errors, Chester maintains that the trial court committed plain error with respect to certain sentencing issues. "Crim.R. 52(B) affords appellate courts discretion to correct '[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. "However, the accused bears the burden of proof to demonstrate plain error on the record, * * * and must show 'an error, i.e., a deviation from a legal rule' that constitutes 'an "obvious" defect in the trial proceedings[.]'" *Rogers* at ¶ 22, quoting *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). This obvious error must have affected the outcome of the trial. *Rogers* at ¶ *22.* Accordingly, the accused must "demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *Rogers* at ¶ 22, citing *United States v. Dominguez Benitez,* 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). "But even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; [the Supreme Court of Ohio has] 'admonish[ed] courts to notice plain error "with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice."'" (Emphasis added.) *Rogers* at ¶ 23, quoting *Barnes* at 27, quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶9}** In his first assigned error, Chester maintains:

4

{¶10} "The trial court committed reversible and plain error by holding a sentencing hearing by remote video conferencing in violation of Defendant's right to be present at every stage of the proceedings."

{¶11} "A defendant 'has a fundamental right to be present at all critical stages of his criminal trial.'" *State v. Taylor*, 2022-Ohio-3611, 198 N.E.3d 956, ¶ 36 (11th Dist.), quoting *State v. Hill*, 73 Ohio St.3d 433, 444, 653 N.E.2d 271 (1995); Article 1, Section 10, Ohio Constitution ("In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel[.]"); and R.C. 2945.12 ("No other person [other than a person indicted for a misdemeanor] shall be tried unless personally present[.]"). "Procedurally, Crim.R. 43(A)(1) provides that 'the defendant must be physically present at every stage of the criminal proceeding and trial, including * * * the imposition of sentence, except as otherwise provided by these rules.'" *Taylor* at ¶ 37. "In felony cases, 'the court may permit the presence and participation of a defendant by remote contemporaneous video for any proceeding,' but only where the defendant has waived, 'in writing or on the record, the defendant's right to be physically present under these rules with leave of court.'" *Taylor* at ¶ 37, quoting Crim.R. 43(A)(2)-(3). "The court may also conduct proceedings in the defendant's absence or by remote contemporaneous video where the defendant's 'conduct in the courtroom is so disruptive that the hearing or trial cannot reasonably be conducted with the defendant's continued physical presence.'" *Taylor* at ¶ 37, quoting Crim.R. 43(B).

{¶12} Here, Chester maintains that the trial court conducted the sentencing hearing in violation of Chester's right to be physically present. The state responds that the trial court held the sentencing hearing via remote contemporaneous video pursuant

to Crim.R. 43(B) due to Chester's prior disruptive behavior. However, Chester maintains that because Crim.R. 43(B) is stated in the present tense, i.e., "a defendant's conduct in the court *is* so disruptive," the disruptive conduct must have occurred at that particular hearing, not a prior hearing, for Crim.R. 43(B) to apply. (Emphasis added.)

{¶13} However, assuming without deciding that Chester's construction of Crim.R. 43(B) is accurate, any error in the trial court proceeding with sentencing via remote contemporaneous video did not amount to a manifest miscarriage of justice, particularly given Chester's conduct when he was previously physically present in the court.

{¶14} Moreover, the state asserts, and we agree, that Chester has failed to establish prejudice. Chester maintains that use of remote contemporaneous video was prejudicial because the trial court failed to notify him at the sentencing hearing of the total amount of jail-time credit he would receive, in violation of R.C. 2929.19(B)(2)(g)(i). However, defense counsel and Chester were able to speak during the hearing, and thus it does not appear that they were precluded from objecting to the trial court's failure to set forth the specific sum of jail-time credit. Thus, we cannot discern a connection between the video format of sentencing and the trial court's failure to state the total days of jail-time credit at sentencing. Accordingly, we review the issue of the trial court's failure to state the total days of jail-time credit below, where Chester has specifically argued this issue as error.

{¶15} For the foregoing reasons, Chester's first assigned error lacks merit.

{¶16} In his second assigned error, Chester argues:

{¶17} "The trial court committed reversible and plain error by not notifying Defendant of his jail-time credit before sentencing or during the sentencing hearing."

6

{¶18} R.C. 2929.19(B)(2)(g)(i) provides, in relevant part:

> Subject to division (B)(3) of this section, if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall * * * [d]etermine, notify the offender of, and include in the sentencing entry the total number of days, including the sentencing date but excluding conveyance time, that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced and by which the department of rehabilitation and correction must reduce the definite prison term imposed on the offender as the offender's stated prison term * * *. The court's calculation shall not include the number of days, if any, that the offender served in the custody of the department of rehabilitation and correction arising out of any prior offense for which the prisoner was convicted and sentenced.

*See also* R.C. 2967.191.

{¶19} Here, after announcing Chester's sentence at the hearing, the trial court stated, "I will give you credit for all the time that you spent in *my jail* towards that sentence." (Emphasis added.) Later at sentencing, the trial court reiterated, "Again, I will calculate the time that you were in *our jail* and give you credit for that time." (Emphasis added.) As set forth in the recitation of facts, the sentencing entry provided Chester with 104 days of jail-time credit "as stipulated to on the record." However, we cannot discern a stipulation as to jail-time credit from the record, and neither party has advanced an explanation as to why the trial court indicated this was an agreed amount of credit.

{¶20} Chester maintains that the trial court committed plain error by not specifying the number of days of credit that he was to receive prior to sentencing him. Nonetheless, the trial court specified that Chester would receive credit for the days he spent in confinement in the Portage County jail. The record establishes that Chester was released from the Portage County jail on a $20,000 personal recognizance bond on August 11, 2021, at which point he was picked up by authorities in Cuyahoga County due to an

7

existing warrant. The record reflects that Chester was returned to the Portage County jail from the Trumbull Correctional Institute on July 29, 2022, to await sentencing, which ultimately occurred on August 10, 2022. Thus, there is no indication from the record that the trial court miscalculated the 104 days of credit for time spent in confinement in the Portage County jail. *Compare State v. Liddy*, 2022-Ohio-4282, 202 N.E.3d 172, ¶ 66 (11th Dist.) (where sentencing court stated defendant was entitled to 425 days of jail-time credit, but sentencing entry stated he was not entitled to jail-time credit because he had received credit in a different case, the discrepancy necessitated a new sentencing hearing). Accordingly, no plain error resulted from the trial court's failure to specify at sentencing the number of days that Chester would be credited for pretrial confinement in the Portage County jail.

{¶21} Chester further claims that he is entitled to credit in this case for the full amount of time between his arraignment on May 21, 2021 and his sentencing on August 10, 2022. In support, Chester relies on *State v. Springs*, 2d Dist. Clark No. 2022-CA-18, 2022-Ohio-4414, ¶ 9, for the proposition that "'[i]t is well settled that a "defendant may accrue jail[-]time credit in multiple cases at the same time, if he or she is held in pretrial confinement in multiple cases simultaneously."'" *Id.* at ¶ 9, quoting *State v. Bingham*, 2d Dist. Champaign No. 2021-CA-9, 2021-Ohio-4102, ¶ 17, quoting *State v. Pack*, 2d Dist. Montgomery No. 28458, 2020-Ohio-5033, ¶ 38 and *State v. Breneman*, 2d Dist. Champaign No. 2015-CA-16, 2016-Ohio-597, ¶ 26.

{¶22} However, "[w]hether jail-time credit accrues simultaneously when a defendant is in pretrial confinement on multiple cases ordinarily depends on whether he receives concurrent or consecutive sentences." *State v. Steinmetz*, 2d Dist. Greene No.

8

2019-CA-40, 2020-Ohio-1145, ¶ 11. The *Springs* case involved jail-time credit where a trial court ordered a sentence to run concurrently with another sentence. *See Springs* at ¶ 9. The present case involves consecutive sentences. "'"When a defendant is sentenced to consecutive terms, the terms of imprisonment are served one after another. Jail-time credit applied to one prison term gives full credit that is due, because the credit reduces the entire length of the prison sentence."'" *Id.* at ¶ 12, quoting *State v. El-Amin*, 10th Dist. Franklin Nos. 17AP-439, 17AP-440, 17AP-441, 2018-Ohio-560, ¶ 12, quoting *State v. Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶ 22. Moreover, "[a] defendant is not entitled to jail-time credit while held on bond if, at the same time, the defendant is serving a sentence on an unrelated case." *See State v. Cupp*, 156 Ohio St.3d 207, 2018-Ohio-5211, 124 N.E.3d 811, syllabus.

{¶23} Here, Chester does not establish how any additional time he spent in pretrial confinement in Cuyahoga County "ar[ose] out of the offense" in the present case. *See* R.C. 2929.19(B)(2)(g)(i). Further, the record does not establish the amount of time that Chester spent in pretrial confinement in Cuyahoga County, the jail-time credit he received in his Cuyahoga County case, or when he began serving his sentence imposed in the Cuyahoga County case.

{¶24} For the foregoing reasons, Chester has failed to demonstrate plain error with respect to the trial court's failure to inform him of the total amount of jail-time credit at sentencing. Accordingly, Chester's second assigned error lacks merit.

{¶25} In his third assigned error, Chester contends:

Case No. 2022-P-0060

**{¶26}** "The trial court committed reversible and plain error by accepting Defendant's guilty plea without strictly complying with the requirements contained within Crim.R. 11(C)(2)(c)."

**{¶27}** "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest." *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. This rule provides, in relevant part:

> (2) In felony cases the court * * * shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:
>
> * * *
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶28}** "A trial court must strictly comply with Crim.R. 11(C)(2)(c) and orally advise a defendant before accepting a felony plea that the plea waives (1) the right to a jury trial, (2) the right to confront one's accusers, (3) the right to compulsory process to obtain witnesses, (4) the right to require the state to prove guilt beyond a reasonable doubt, and (5) the privilege against compulsory self-incrimination. When a trial court fails to strictly comply with this duty, the defendant's plea is invalid." *Veney* at syllabus. A trial court's failure to apprise a defendant of these constitutional rights prior to his plea results in plain error. *Veney* at ¶ 24.

10

Case No. 2022-P-0060

{¶29} At the change of plea hearing, the trial court engaged in the following colloquy regarding Chester's waiver of his constitutional rights:

> THE COURT: Okay. By entering this plea of guilty, you're giving up your right to a trial by jury.
>
> At that trial, the prosecutor would have to prove beyond a reasonable doubt each and every element of the charges against you.
>
> Your Attorney could cross-examine and confront the witnesses who come in and testify for the State of Ohio, you could subpoena or compel witnesses, have them come in and testify for you and you can take the stand at your trial if you chose to do so. You have a constitutional right not to testify, but if you wanted to you could. That, along with those rights to trial, you're giving up by entering this plea of guilty; do you understand?
>
> DEFENDANT: Yes.

{¶30} Chester maintains that the trial court did not strictly comply with constitutional notifications required by Crim.R. 11(C)(2)(c) because the trial court failed to orally advise him that he was "waiving the privilege against compulsory self-incrimination" and failed to specifically ask Chester if he understood that, by pleading guilty, he would be waiving all of his constitutional rights contained within Crim.R. 11(C)(2)(c).

{¶31} Although it is preferred that the trial court use the language contained in Crim.R. 11(C)(2)(c) during the plea colloquy, the trial court's failure to do so will not automatically invalidate a plea. *Veney* at ¶ 18. "Failure to use the exact language contained in Crim.R. 11(C), in informing a criminal defendant of his constitutional right to a trial and the constitutional rights related to such trial * * * is not grounds for vacating a plea as long as the record shows that the trial court explained these rights in a manner

11

reasonably intelligible to that defendant * * *." *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), paragraph two of the syllabus.

{¶32} Here, the trial court referred to Chester's "constitutional right not to testify" and informed him that he was "giving up" that right, along with "those rights to trial," referring to the rights the trial court had just previously enunciated, i.e. a trial by jury, where the state would bear the burden of proof beyond a reasonable doubt of each element of the offenses, and where Chester could cross-examine witnesses, compel witnesses, and testify if he chose to do so. We conclude that the trial court explained the Crim.R. 11(C)(2)(c) rights in a manner reasonably intelligible to Chester, and further explained in a manner reasonably intelligible to Chester that by pleading guilty, he was waiving those rights.

{¶33} Accordingly, Chester's third assigned error lacks merit.

{¶34} The judgment is affirmed.


JOHN J. EKLUND, P.J.,

MATT LYNCH, J.,

concur.

12